Filed 10/2/2020 1:46 P
Virginia Pallar
Combination Cle
Presidio County, Tex
By Sarah Martin

Cause No. ___8024___

| | | |
|---|---|---|
| **GREGORY ROMEU** | § | **IN THE DISTRICT COURT** |
| **D/B/A DEVIL'S ADVOCATE** | § | |
| **ARMORY** | § | |
| Plaintiff | § | 394th |
| | § | _____ **JUDICIAL DISTRICT** |
| **v.** | § | |
| | § | |
| **CITY OF MARFA** | § | |
| Defendant | § | **PRESIDIO COUNTY, TEXAS** |

## PLAINTIFF'S ORIGINAL PETITION AND REQUEST FOR DISCLOSURE

TO THE HONORABLE JUDGE OF THIS COURT:

NOW COMES **Gregory Romeu d/b/a Devil's Advocate Armory**, Plaintiff, to file this petition against the **City of Marfa**, Defendant, for breach of contract.

In February 2020, Plaintiff formed a contract with Defendant City of Marfa to host a gun show in May 2020. Plaintiff paid Defendant for the rental of the Marfa Activity Center to house the event. Plaintiff contracted with vendors to attend and sell firearms at the gun show. Both Plaintiff and vendors expended thousands of dollars relying upon the contract. About a week before the event, the City informed Romeu that he would not be allowed to use the activity center for the event. By cancelling the gun show on such short notice, Marfa caused direct economic damages to Romeu and additional damages to his vendors, some of whom have assigned those damages to Romeu. Plaintiff seeks reliance damages, lost profits, and fees. Defendant denies the existence of a contract.

**EXHIBIT**

___1___

## I.    DISCOVERY CONTROL PLAN

1.    Plaintiff intends to conduct discovery in this case under Level 3 pursuant to Texas Rules of Civil Procedure 190.4.

## II.    RELIEF SOUGHT

2.    Plaintiff seeks monetary relief over $100,000 but not more than $250,000, including damages of any kind, penalties, costs, expenses, pre-judgment interest, and attorney fees pursuant to Texas Rules of Civil Procedure 47. The damages sought are within the jurisdictional limits of the court.

## III.    PARTIES AND SERVICE

3.    Plaintiff Gregory Romeu d/b/a Devil's Advocate Armory ("Romeu") is an individual and resident of Presidio County, Texas, and may be contacted through his attorneys of record, the undersigned.

4.    Defendant City of Marfa ("Marfa") is a general law municipality organized under the laws and Constitution of Texas which may be served through the City of Marfa Secretary, Chelsea Smith, 113 S Highland Avenue, Marfa, Texas 79843.

## IV.    JURISDICTION, VENUE, and WAIVER OF IMMUNITY

5.    This Court has jurisdiction under Section 24.007 of the Texas Gov't Code.

6.    Pursuant to Texas Civil Practice & Remedies Code § 15.035(a), venue is proper in Presidio County because the dispute arises in whole or in part out of a contract with a writing to perform an obligation in Presidio County, Texas.

7.     As the parties must have formed a contract upon which this suit is based, the City waived immunity under Section 271.152 of the Texas Local Gov't Code.

8.     Plaintiff's agreement includes the terms considered essential in Texas to form a contract. Defendant has waived any sovereign immunity to the claims and causes of action asserted in this petition (both immunity from suit and from liability) because Plaintiff and Defendant entered into a written contract.

## V.     FACTUAL AND LEGAL BACKGROUND

9.     On February 14, 2020, Romeu and Marfa formed a contract ("Contract") in which Romeu paid $550 to Marfa for use of the Marfa Activity Center ("MAC") located at 105 N Mesa Street, Marfa, Texas 79843 on May 30-31.

10.     During the Contract formation, Minerva Lopez, Director of Tourism in Marfa, acted with authority on behalf of Marfa. Lopez and Romeu were known to each other from previous discussions and rental contracts, as Romeu had previously conducted a gun show in Marfa in November 2019,

11.     After Romeu paid Marfa $550.00 to lease the MAC, Marfa gave Plaintiff a receipt titled "City of Marfa Visitors Center No. 00154" ("Receipt")[1] signed by Patrick Rivera. The Receipt states "Balance Due $0" and "MAC fees May 30-31."

12.     Rivera is the Assistant to the Director of Tourism in Marfa. In that capacity, Rivera was an agent acting with authority on behalf of Defendant City of Marfa.

_____

[1] The Receipt is attached as Exhibit C and incorporated by reference.

13.     Rivera and Lopez are in the business of renting out spaces including but not limited to the MAC on behalf of the City of Marfa.

14.     Marfa's agents clearly understood that Romeu planned on using the MAC to host a gun show during which Romeu planned to profit by sale of space in the MAC to gun vendors which sell goods for profit ("Gun Show"). As the parties previously conducted a gun show in November of 2019; this process was known and both parties knew what to expect.

15.     Romeu planned the Gun Show, expending funds on advertising and forming sub-leases for tables at the Gun Show with vendors.

16.     About May 23, 2020, Minerva Lopez, the Director of Tourism in Marfa, called Romeu and informed him that he was "$50 short." As stated above, the Receipt states that no balance remained to be paid.

17.     If more money were owed to Defendant to rent the MAC, an additional payment or payments would have been mentioned on the Receipt. Nevertheless, Plaintiff drove directly to Lopez to remedy any potential last-minute problem.

18.     Upon Plaintiff's arrival that afternoon, Lopez corrected her error, but sent Plaintiff to speak with a city administrative assistant. Plaintiff met with the assistant, who introduced herself to Plaintiff while in the company of the chief of police. The assistant informed Plaintiff that all public buildings were to be closed for the next two months, which included the MAC, due to fear of COVID-19.

19.     This was May 23, 2020. The Gun Show had been planned since Plaintiff's previous Gun Show in November 2019; the Contract had been formed in February.

20.     Marfa gave no notice of any cancelation until a week prior to the Gun Show and Marfa's promised performance.

21.     At the time of cancellation, there were zero confirmed or reported Coronavirus cases in Marfa.

22.     Romeu secured counsel, and two days later, on May 25, 2020, the undersigned sent a demand letter ("Demand Letter")[2] to Marfa through County Judge Guevara, the Presidio County Attorney, Texas Attorney General, and the Governor's Communication Department.

23.     Marfa's counsel responded to the Demand Letter on May 28, 2020, response[3] (Response Letter), asserting that the Receipt in question represented "a deposit" though the Receipt states "Balance Due $0".

## VI.    CLAIM BACKGROUND

24.     Parties formed an enforceable contract. Whether a contract exists involves both questions of fact—such as the intent of the parties—and questions of law—such as whether the facts as found constitute a contract. *Merritt-Campbell, Inc. v. RxP Prods., Inc.*, 164 F.3d 957, 959 (5th Cir. 1999). The elements for breach of

---

[2] The Demand Letter is attached and incorporated by reference as Exhibit A.
[3] The Response Letter is attached and incorporated by reference as Exhibit B.

contract are (1) a valid contract, (2) the plaintiff's performance or tendered performance, (3) the defendant's failure to perform the contract, and (4) damages as a result of the breach. *Paragon Gen. Contractors, Inc. v. Larco Constr., Inc.*, 227 S.W.3d 876, 882 (Tex. App.—Dallas 2007).

25.    Defendant promised the use of the MAC to Plaintiff for May 30-31, 2020. Plaintiff completed his obligation of partial-performance when he provided a cash consideration at the time of the Contract's formation.

26.    Defendant, through its agent, knew what it was undertaking at the time of contract formation.  *Shin-Con Development v. LP. Invest., Ltd.*, 270 S.W.3d 759, 765 (Tex. App.—Dallas 2008).

27.    Defendant breached the contract by preventing Plaintiff from using the MAC for the May 30-31, 2020 Gun Show.

28.    In Texas, the intent of the parties at the time of contract formation is determinative. In construing a written contract, the primary concern of the court is to ascertain the true intentions of the parties as expressed in the instrument. *Reilly v. Rangers Management, Inc.*, 727 S.W.2d 527, 529 (Tex. 1987); *Coker v. Coker*, 650 S.W.2d 391, 393 (Tex.1983).

29.    All provisions in a contract must be considered with reference to the whole instrument. *Coker*, 650 S.W.2d at 393. If the written instrument is so worded that it can be given a certain definite meaning or interpretation, then it is not ambiguous

and the court will construe the contract as a matter of law. *Coker*, 650 S.W.2d at 393; *Huggins*, 765 S.W.2d at 543; *Corriveau*, 697 S.W.2d at 767. A court should construe contracts from a utilitarian standpoint bearing in mind the particular business activity sought to be served. *Reilly*, 727 S.W.2d at 530.

30.    Defendant therefore committed breach of contract on or about May 23, 2020, when it prevented Plaintiff from hosting, and his vendors from profiting at the Gun Show.

31.    Receipts have been recognized and respected as contracts by the Texas Supreme Court for over a century. *Brackenridge v. Claridge*, 44 S.W. 819, 821 (Tex. 1898). Though in the form of a receipt, this is a valid and binding contract, expressing in writing the terms upon which the minds of the parties met. *Id.*

32.    The Contract fixed with certainty the material terms; both the time, "May 30-31" and the place, "MAC" of the performance Defendant promised, as required by Texas law. *Fischer v. CTMI, L.L.C.,* 479 S.W.3d 231, 236–237 (Tex. 2016).

33.    To ensure clarity: though Plaintiff gave written notice, written notice is not required in suits against a municipality which arise out of breach of contract. *Geo. L. Simpson v. City of Lubbock*, 17 S.W.2d 163 (Tex. Civ. App. 1928).

34.    That Defendant was the only party to sign the Contract does not lessen its binding nature. It is not necessary that an agreement be signed by both parties. *Hearthshire Braeswood Plaza Ltd. Partnership v. Bill Kelly Co.*, 849 S.W.2d 380

(Tex. App.—Houston 1993).  If only one party signs a written contract, the other

party may accept by acts, conduct, or acquiesce in the terms of the contract. *Id.*

35.    Opinion KP-0296 of Attorney General Paxton (the "Opinion" is

incorporated by reference as Exhibit D pursuant to Texas Rules of Civil Procedure

59), dated March 27, 2020, made clear that emergency orders do not stop gun

sales. The Opinion was provided by Plaintiff in his Demand Letter to the

Defendant (Exhibit A), and reads as follows:

> Subsections 229.001(a) and 236.002(a) of the Local Government
> Code prohibit a municipality or county from adopting regulations
> related to the transfer, possession, or ownership of firearms, or
> commerce in firearms. These provisions apply to municipal and
> county regulation "notwithstanding any other law." Thus, while
> municipal and county officials possess general emergency authority to
> control the movement of persons and the occupancy of premises in a
> local disaster area under Government Code section 418.108, such
> orders may not regulate or restrict the sale of firearms.

Opinion KP-0296 of Attorney General Paxton.

36.    Furthermore, the Opinion illustrated the application and interpretation of the

words "related to" (emphasis added):

> Texas courts recognize that the phrase "relating to" is a "very broad
> term." *RSR Corp. v. Siegmund*, 309 S.W.3d 686, 701 (Tex. App.—
> Dallas 2010, no pet.); see also *Kirby Highland Lakes Surgery Ctr.,
> L.L.P. v. Kirby*, 183 S.W.3d 891, 898 (Tex. App.—Austin 2006, no
> pet.) (explaining that courts have construed the phrase "related to"
> within the arbitration context to be "extremely broad" and "capable of
> expansive reach" (citations and quotation marks omitted)). In
> addition, when the Legislature uses the phrase "notwithstanding any
> other law," courts construe that language as "an express, unambiguous

conflicts-of-law provision." *Molinet v. Kimbrell*, 356 S.W.3d 407, 414 (Tex. 2011). Thus, although section 418.108 of the Government Code may generally allow municipal and county officials to "control the movement of persons and the occupancy of premises" in a local disaster area, notwithstanding that general authority, **emergency orders from local officials may not relate to the transfer, possession, ownership or sale of firearms**.

Opinion KP-0296 of Attorney General Paxton

37.    Whatever action a city takes, even in times of emergency, such action shall not relate to the transfer, possession, ownership or sale of firearms "notwithstanding any other law." Any such action is void.

38.    In addition to prohibiting county or municipal regulation in these areas, the Legislature articulated the effect of a municipal or county regulation related to the transfer, possession, ownership or sale of firearms. Any attempt to adopt or enforce an "ordinance, resolution, rule, or policy . . . , or an official action, including in any legislative, police power, or proprietary capacity" taken in violation of subsection 229.001(a) or 236.002(a) "is void." TEX. LOC. GOV'T CODE §§ 229.001(a-1), 236.002(b). The statutes' unambiguous words disclose the Legislature's intent: if a municipality or county adopts a regulation related to the transfer, possession, ownership or sale of firearms, that regulation will be void to the extent that it is in conflict with section 229.001(a) or section 236.002(a). See *Tex. Lottery Comm'n v. First State Bank of DeQueen*, 325 S.W.3d 628, 639 (Tex. 2010).

39.    Thus, municipal and county officials may not use their emergency

powers under section 418.108 of the Government Code to regulate or restrict the sale of firearms.

40.     A municipal corporation, making a contract by its proper officers or agents, is liable for a breach thereof in the same manner and to the same extent as individual persons or private corporations. *Horn v. Matagorda County et al.* (Tex. Com. App. 1919) 213 S.W. 934.

41.     All conditions precedent have occurred to prosecute this claim.

## VII.   CLAIM – BREACH OF CONTRACT (ROMEU)

42.     As a proximate result of Defendant's breach, Plaintiff suffered damages for which Defendant is liable. The proper remedy for breach of contract is damages. *Aquaplex, Inc. v. Rancho La Valencia, Inc.*, 297 S.W.3d 768, 774 (Tex. 2009). The purpose of damages is to put the non-breaching party in the same economic position he would have been in had the contract not been breached. *Tacon Mechanical Contractors, Inc. v. Grant Sheet Metal, Inc.*, 889 S.W.2d 666 (Tex. App.—Houston 1994).

43.     At common law, "actual damages" include both direct and consequential damages. *Arthur Andersen & Co. v. Perry Equip. Corp.*, 945 S.W.2d 812, 816 (Tex. 1997); *Henry S. Miller Co. v. Bynum*, 836 S.W.2d 160, 163 (Tex. 1992) (Phillips, C.J., concurring).

44.    One type of direct damages, the "benefit-of-the-bargain," utilizes an expectancy theory and evaluates the difference between the value as represented and the value received.

45.    "Consequential damages," also referred to as "special damages" at common law, are those which may result naturally but not necessarily from the wrongful act because they require the existence of some other fact beyond the relationship of the parties. *Arthur Andersen*, 945 S.W.2d at 816 (consequential damages not necessarily referable to the breach, but the loss must still have been reasonably foreseeable or within the contemplation of the parties); *Henry S. Miller*, 836 S.W.2d at 163; *Cherokee County Cogeneration Partners, L.P. v. Dynegy Mktg. & Trade*, 305 S.W.3d 309 313-14 (Tex. App. Houston 2009).

46.    Plaintiff seeks direct damages. Those damages which naturally follow from the breach of a contract, when the defaulting party is without notice of any special conditions that would increase the measure of liability, are "direct"; damages which follow on account of knowledge of special conditions, imputed to the defaulting party when the contract was made, and increasing the standard of liability, are 'consequential'. *Gregory v. Tyler Grain & Storage Co.*, 341 S.W.2d 221, 223 (Tex. App. Texarkana 1960).

47.    Plaintiff is permitted to receive direct damages from a municipality arising out of a breach of contract. Texas Local Government Code Annotated § 271.153.

48.     Plaintiff seeks the following damages which were proximately caused by Defendant's breach: $400.00 spent on radio airtime, advertisements purchased to promote the Gun Show, and $2,727.41 spent on items necessary for, and in furtherance of, making the Gun Show a success (including, but not limited to; local catering, use of hotels by Vendors, and ensuring the presence of sufficient labor to assist in setting up for the Gun Show on both days).

49.     At this time, Plaintiff's individual expenses of $3,127.41, minus the value of what he received, $0, amounts to $3,127.41.

## VIII.    CLAIM – BREACH OF CONTRACT (THIRD-PARTY BENEFICIARY)

50.     Additionally, over ten separate Vendors[4] contracted with Plaintiff for the use of over thirty merchant tables. Plaintiff contracted with Defendant in order to earn a profit through these Vendors. Both parties contemplated this very purpose at formation, as shown, with certainty, by the Contract's descriptive language.

51.     The Vendors, therefore, were intended third-party beneficiaries of the Contract. A person not a party to a contract may enforce it if it appears that it was made for his benefit. *Knox v. Ball*, 144 Tex. 402, 409, 191 S.W.2d 17, 21 (1945). The Vendors, along with Plaintiff, were to be beneficiaries of the Contract.

52.     That the Vendors contracted with Plaintiff for the specific purposes of selling goods and profiting financially therefrom is established. Had this not been

---

[4] At the time of the Demand Letter's composition, the number of Vendors was believed to be 60. This number reflected the potential number of available tables, however.

contemplated and assented to, it is unlikely that either party would have formed the Contract. Plaintiff is not in the business of occupying merchant tables himself, but of providing spaces *for* Vendors. Without Vendors, the Plaintiff could not make a profit; without the Plaintiff, Vendors could not make a profit; without Defendant, Plaintiff and his Vendors all lost money.

53.   The Vendors suffered damages as a result of Defendant's breach. By relying upon Defendant's promise, both the Vendors and Plaintiff alike expended thousands of dollars preparing for the Gun Show. Plaintiff and Vendors alike were prevented from holding the Gun Show and are now out-of-pocket for thousands of dollars without profits with which to replace those funds. Some of the Vendors have assigned their claims to Plaintiff for the purposes of this case (Exhibit E) and others may do so before final judgment is issued on the instant case. The total amount of damages to Plaintiff and Vendors will be determined during discovery.

54.   The amount of damages sought by Plaintiff will be carefully measured during discovery with respect to market values at the time of the breach and not by the market gain as of the time of trial. *General Universal Systems, Inc. v. Lee*, 379 F.3d 131 (5th Cir. 2004).

55.   That the exact measure has not been plead herein does not discredit the merits of Plaintiff's case. Under Texas law, a party is not required to plead his measure of damages. *Rowan Cos. v. Transco Exploration Co.*, 679 S.W.2d 660,

665 (Tex. App.—Houston 1984). Texas Rules of Civil Procedure 47 requires only a short and concise statement of a cause of action (i.e., breach of a specific contract) and damage from such breach. *Bowen v. Robinson*, 227 S.W.3d 86, 94 (Tex. App.—Houston 2006).

## IX.   ATTORNEY'S FEES

56.   To pursue his claim against Defendant, Plaintiff was required to commence legal proceedings. Plaintiff is entitled to recover court costs and reasonable and necessary attorney's fees pursuant to:

a.   Texas Civil Practice and Remedies Code § 38, with additional contingent fees to be awarded should this suit be appealed.

b.   Texas Civil Practice and Remedies Code § 37.009, with additional fees to be awarded should this suit be appealed.

## X.   CLAIM - ATTORNEY FEES

57.   Plaintiff seeks attorney fees pursuant to Chapter 38 of the Texas Civil Practices and Remedies Code.

## XI.   REQUEST FOR DISCLOSURE

58.   Pursuant to Texas Rules of Civil Procedure § 194, Defendant is hereby requested to disclose within fifty (50) days after the date of service of this request the information and material described in Texas Rules of Civil Procedure § 194.2.

## XII.   PRAYER

59.    Plaintiff requests that Defendant be cited to appear and answer, and that this

Court, upon a final hearing or trial in this action, enter judgment in Plaintiff's favor

and against Defendant on all claims asserted in this action, including a request for

award of damages as follows:

     a.     Direct damages;

     b.     Pre- and post-judgment interest at the highest legal rate;

     c.     Attorney fees, including contingent amounts in the event of

appellate proceedings;

     d.     Judgment for all costs of court;

     e.     All further relief to which Plaintiff may be entitled.

Respectfully submitted,

Warren Norred, Texas Bar No. 24045094
200 E. Abram, Suite 300; Arlington, TX  76010
817-478-1132 Office; 817-478-1133 Facsimile
Attorney for Plaintiff

EXHIBITS:
Exhibit A - Plaintiff's 25 May 2020 Demand Letter
Exhibit B - Defendant's 28 May 2020 Response Letter
Exhibit C - 14 February 2020 Contract
Exhibit D - Attorney General Opinion No. KP-0296
Exhibit E - Vendor Claim Assignments

Exhibit A



Norred Law, PLLC
515 E. Border
Arlington, TX 76010

www.norredlaw.com
817-704-3984 o
817-549-0161 f

May 25, 2020

**Mayor Manny Baeza**
mayor@cityofmarfa.com
**Irma Salgado, Mayor Pro Tem**
councilmembersalgado@cityofmarfa.com
**Buck Johnston**
councilmemberjohnston@cityofmarfa.com
**Raúl Lara**
councilmemberlara@cityofmarfa.com
**Natalie Melendez**
councilmembermelendez@cityofmarfa.com
**Yoseff Ben-Yehuda**
councilmemberbenyehuda@cityofmarfa.com

**Presidio County Judge Guevara**
countyjudge@co.presidio.tx.us
**Presidio County Attorney Rod Ponton**
F: 432-729-3743

**Cc: Texas Attorney General Paxton**
disaster-counsel@oag.texas.gov
**Cc: Texas Governor Greg Abbott**
Comm. Dep't., F: 512-463-1847

**Re: Closure of Marfa Activity Center/Breach of Contract for Gun Show**

To the Honorable Mayor Baeza,

My firm represents Gregory Romeu. The City of Marfa agreed to rent the city's MAC Hall to Mr. Romeu and his business, Devil's Advocate Armory, for a gun show scheduled for next weekend, May 30 and 31.

I am copying County Judge Guevara and the County Attorney just so everyone can be on the same page, along with the Texas Attorney General and the Governor's Communication Department.

Generally speaking, the City of Marfa can certainly choose to keep city buildings closed based on whatever reason it chooses, or no reason at all. But what it cannot do is form an agreement to lease its building, take my client's money, and then a week before the show make a decision to breach that contract based on zero cases of COVID-19 and a Governor's executive orders concerning the COVID-19 virus to stop a gun show after months of inaction.

When the City took Mr. Romeu's money for a gun show in February, it formed a contract. Yes, it's true – the virus fear showed up around that time, and a lot of people have shut down a lot of commercial activity based on that fear. And if the City had contacted Mr. Romeu in February or March or even April, the parties could have perhaps worked something out.

Exhibit A

However, none of that happened. Mr. Romeu and his vendors expect to have use of the MAC on May 30 and 31 of this year for a gun show because the City took his money, and there is a history of previous gun shows for this purpose, and there exists no good reason to breach the contract today.

I have attached a copy of the receipt as Exhibit 1 to this letter.

I am also attaching the opinion of Attorney General Paxton's March 27, 2020 Opinion KP-0296, which makes clear that emergency orders do not stop gun sales. Attorney General's opinion includes this summary:

---

### SUMMARY

Subsections 229.001(a) and 236.002(a) of the Local Government Code prohibit a municipality or county from adopting regulations related to the transfer, possession, or ownership of firearms, or commerce in firearms. These provisions apply to municipal and county regulation "notwithstanding any other law." Thus, while municipal and county officials possess general emergency authority to control the movement of persons and the occupancy of premises in a local disaster area under Government Code section 418.108, such orders may not regulate or restrict the sale of firearms.

---

This opinion does not say that your city must rent to people wanting to have gun shows, but what it does say is that your city is not going to be able to cite an emergency order concerning the virus in a last-minute attempt to stop the existing rental of building for a gun show based on a virus-oriented executive order.

Mr. Romeu has already expended thousands of dollars to prepare for this show, including but not limited to local catering, use of hotels by vendors, radio ads, ensuring sufficient help to run the operation. Each of the approximately 60 vendors expects to make a profit ranging from $500 to $10,000 over the weekend. That's profit, and not merely income. If we assume $4,000 profit, the lost profit for Mr. Romeu and his vendors will exceed $250,000.

If your City does not immediately relent, I will suggest an immediate filing of suit in district court and seek an immediate writ of mandamus or injunction requiring the City to let my client use the MAC. If that happens, I will likely represent all the vendors too, as they were intended third-party beneficiaries of the lease.

Exhibit A

The judicial system is not always predictable, and I cannot know if the district court will immediately agree with us or not to order the City to perform by handing over the MAC this coming weekend. No one can predict immediate victory. But when my office challenged the City of Dallas regarding salon owner Shelley Luther, the Supreme Court has agreed with us far; my analysis is that Marfa's case is much weaker than that of Dallas. You have an actual contract with Mr. Romeu.

You should also recognize that the losses to your starving hotels will not be trivial. Each one of your hotels and businesses is struggling to stay alive, and each one of them will be called as witnesses to validate the amount of money that they lost by your decision. Some of them will agree with you, but many will not. By that time, everyone will recognize the government overreaction to this virus for what it was. Your fear of the COVID-19 virus warrants caution, but not paralysis or petrification of all commercial activities to include breaches of contracts.

As I understand it, Presidio County currently has zero cases of COVID-19; you can even operate at 50% capacity in your restaurants. The idea was to flatten the curve so your medical facilities can handle the inevitable cases, not to flatten the economy so already-struggling people have even more pressure to perform. That decision can cost human lives as well. If this rental required a dozen city employees to show up and work the show, it would be one thing. But Mr. Romeu just needs the keys to the facility, and no city employee is necessary.

The decisions you are making are not always easy and your city council is not deliberately trying to hurt people, but unless corrected, that is your direction. I urge you to take another route.

A suit can be avoided by doing nothing more than performing the contract your city made with Mr. Romeu, but he needs to know that he can depend on the City to keep its word. I need to hear back from you no later than the close of business on Tuesday, May 27, 2020, to resolve this. We need the keys to the MAC immediately.

Yours,

Warren V. Norred, P.E., Texas Bar No. 24045094, wnorred@norredlaw.com
NORRED LAW, PLLC
515 E. Border St., Arlington, Texas 76010
Tel. (817) 704-3984, Fax. (817) 524-6686
Cell (817) 253-9999

Exhibit A



## KEN PAXTON
ATTORNEY GENERAL OF TEXAS

March 27, 2020

The Honorable Dustin Burrows
Chair, House Ways and Means Committee
Texas House of Representatives
Post Office Box 2910
Austin, Texas 78768-2910

**Opinion No. KP-0296**

Re:    Whether sections 229.001 and 236.002 of the Local Government Code prohibit municipal or county officials from restricting the sale of firearms through an emergency declaration (RQ-0341-KP)

Dear Representative Burrows:

You ask whether city or county officials may prohibit the sale of firearms through an emergency declaration that excludes firearms retailers as essential businesses.[1]

Multiple provisions within the Government Code recognize governmental entities in Texas may require additional authority during times of disaster to address emergency situations. *See* TEX. GOV'T CODE §§ 418.001–.261. Relevant here, the Legislature authorized the presiding officer of a governing body of a municipality or county to declare a local state of disaster. *Id.* § 418.108(a); *see id* § 418.004(6).[2] Once a local state of disaster has been declared, the "county judge or the mayor of a municipality may control ingress to and egress from a disaster area under the jurisdiction and authority of the county judge or mayor and control the movement of persons and the occupancy of premises in that area." *Id.* § 418.108(g). Pursuant to that authority, some counties and municipalities in Texas, in recent days, declared local disasters due to the spread of the disease COVID-19 and issued orders requiring all non-essential businesses to limit or cease operations.[3] You indicate that some of these orders exclude firearms retailers as essential

---

[1]*See* Letter from Honorable Dustin Burrows, Chair, House Comm. on Ways & Means, to Honorable Ken Paxton, Tex. Att'y Gen. at 1 (Mar. 24, 2020), https://www2.texasattorneygeneral.gov/opinion/requests-for-opinion-rqs ("Request Letter").

[2]Your question is limited to municipal or county authority to restrict the sale of firearms. Request Letter at 1. You do not ask about, and we do not address, any emergency authority the Governor has to limit or suspend the sale of firearms during a disaster declaration. *See* TEX. GOV'T CODE § 418.019 ("The governor may suspend or limit the sale, dispensing, or transportation of alcoholic beverages, firearms, explosives, and combustibles.").

[3]*See, e.g.*, Order of the Mayor of the City of Austin Steve Adler (Mar. 24, 2020), *available at* http://www.mayoradler.com/wp-content/uploads/2020/03/Order-20200324-007-Stay-Home-Work-Safe.pdf.

Exhibit 2

businesses, thereby prohibiting or restricting those retailers from operating their businesses. *See* Request Letter at 1.

While the Legislature granted local officials certain emergency powers to address disaster situations, that local authority is not without limitation. Relevant to your question, provisions in the Local Government Code prohibit municipalities and counties from regulating, among other things, the transfer, possession, ownership, or sale of firearms, "notwithstanding any other law." *See* TEX. LOC. GOV'T CODE §§ 229.001(a), 236.002(a). Section 229.001 of the Local Government Code prohibits certain municipal regulation:

> *Notwithstanding any other law*, . . . a municipality may not adopt regulations relating to:
>
> (1) the transfer, possession, wearing, carrying, ownership, storage, transportation, licensing, or registration of firearms, air guns, knives, ammunition, or firearm or air gun supplies or accessories;
>
> (2) commerce in firearms, air guns, knives, ammunition, or firearm or air gun supplies or accessories; or
>
> (3) the discharge of a firearm or air gun at a sport shooting range.

TEX. LOC. GOV'T CODE § 229.001(a) (emphasis added). Using almost identical language, section 236.002 of the Local Government Code prohibits counties from adopting regulations related to the same matters. *Id.* § 236.002(a). Texas courts recognize that the phrase "relating to" is a "very broad term." *RSR Corp. v. Siegmund*, 309 S.W.3d 686, 701 (Tex. App.—Dallas 2010, no pet.); *see also Kirby Highland Lakes Surgery Ctr., L.L.P. v. Kirby*, 183 S.W.3d 891, 898 (Tex. App. — Austin 2006, no pet.) (explaining that courts have construed the phrase "related to" within the arbitration context to be "extremely broad" and "capable of expansive reach" (citations and quotation marks omitted)). In addition, when the Legislature uses the phrase "notwithstanding any other law," courts construe that language as "an express, unambiguous conflicts-of-law provision." *Molinet v. Kimbrell*, 356 S.W.3d 407, 414 (Tex. 2011). Thus, although section 418.108 of the Government Code may generally allow municipal and county officials to "control the movement of persons and the occupancy of premises" in a local disaster area, notwithstanding that general authority, emergency orders from local officials may not relate to the transfer, possession, ownership or sale of firearms.[4]

---

[4]Some local disaster declarations and related orders restrict the operation of business to delivery or curbside service for certain retail operations. However, federal regulations governing the purchase of firearms generally require in-person transactions with licensed dealers. *See, e.g.*, 27 C.F.R. § 478.124(a) (requiring a licensed dealer to record all firearms transactions on a firearms transaction record, Form 4473); *see also* Bureau of Alcohol, Tobacco, Firearms & Explosives, Form 4473, *available at* https://www.atf.gov/firearms/docs/4473-part-1-firearms-transaction-record-over-counter-atf-form-53009/download (requiring form preparation "in original only at the licensed premises" of the dealer). Thus, limiting retail sales of firearms to delivery or curbside service will effectively prohibit firearms sales from licensed dealers.

The Honorable Dustin Burrows - Page 3

In addition to prohibiting county or municipal regulation in these areas, the Legislature articulated the effect of a municipal or county regulation related to the transfer, possession, ownership or sale of firearms.  Any attempt to adopt or enforce an "ordinance, resolution, rule, or policy . . . , or an official action, including in any legislative, police power, or proprietary capacity" taken in violation of subsection 229.001(a) or 236.002(a) "is void."  TEX. LOC. GOV'T CODE §§ 229.001(a-1), 236.002(b).[5]  The statutes' unambiguous words disclose the Legislature's intent: if a municipality or county adopts a regulation related to the transfer, possession, ownership or sale of firearms, that regulation will be void to the extent of a conflict with section 229.001(a) or section 236.002(a).  *See Tex. Lottery Comm'n v. First State Bank of DeQueen*, 325 S.W.3d 628, 639 (Tex. 2010).  Thus, municipal and county officials may not use their emergency powers under section 418.108 of the Government Code to regulate or restrict the sale of firearms.

Section 229.001 of the Local Government Code recognizes municipal authority under other law to "regulate the *use* of firearms, . . . in the case of an insurrection, riot, or natural disaster if the municipality finds the regulations necessary to protect public health and safety."  TEX. LOC. GOV'T CODE § 229.001(b)(4) (emphasis added).  Thus, municipal governments possess limited authority to regulate firearms during a disaster.  *Id.* § 229.001(a).  However, the action of using a firearm is distinct from the transfer, ownership, or sale of the firearm, each of which can be accomplished without actual use.  Thus, municipal authority to regulate the use of firearms during a disaster does not grant authority to also regulate the transfer, possession, ownership or sale of firearms.

---

[5]The Legislature authorized the Attorney General to "bring an action in the name of the state to obtain a temporary or permanent injunction" against a municipality or county adopting a regulation in violation of these provisions. TEX. LOC. GOV'T CODE §§ 229.001(f), 236.002(f).

The Honorable Dustin Burrows - Page 4

### S U M M A R Y

Subsections 229.001(a) and 236.002(a) of the Local Government Code prohibit a municipality or county from adopting regulations related to the transfer, possession, or ownership of firearms, or commerce in firearms. These provisions apply to municipal and county regulation "notwithstanding any other law." Thus, while municipal and county officials possess general emergency authority to control the movement of persons and the occupancy of premises in a local disaster area under Government Code section 418.108, such orders may not regulate or restrict the sale of firearms.

Very truly yours,

KEN PAXTON
Attorney General of Texas

JEFFREY C. MATEER
First Assistant Attorney General

RYAN L. BANGERT
Deputy Attorney General for Legal Counsel

VIRGINIA K. HOELSCHER
Chair, Opinion Committee

Exhibit B

**MESSER ★ FORT ★ McDONALD**
THE MUNICIPAL LAW FIRM

NORTH TEXAS | AUSTIN | ABILENE

May 28, 2020

**Vis Email (wnorred@norredlaw.com)**
Warren V. Norred
Norred Law, PLLC
515 E Border Street
Arlington, Texas 76010

RE:     Closure of Marfa Activity Center

Mr. Norred

Thank you for giving me the opportunity to respond to your letter of May 25, 2020, directed to the City of Marfa relating to the purported contract between the City and your client, Mr. Gregory Romeu, for the use of the City's MAC Hall for a gun show, previously scheduled to be held May 30 and 31. I hope to address the points raised in your letter so that litigation between your client and the City can be avoided.

You recognize in your letter that "[g]enerally speaking, the City of Marfa can certainly choose to keep city buildings closed based on whatever reason it chooses, or no reason at all." The reason you allege that the City cannot close the MAC over the upcoming weekend is that it allegedly is breaching a contract between the City and Mr. Romeu. However, under Texas law it is clear that no binding contract ever existed between the City and Mr. Romeu, and, as a result, no breach of any agreement occurs by the City determining that the MAC must remain closed. You should also know that *all* City buildings, including City hall, the MAC, library, and the USO tourism center, have been closed since at least March 20, 2020 due to the COVID 19 pandemic. The City has also determined that its swimming pool will not open for the summer season. This was determined by the Mayor and then the City council.

It is established that a city may contract only with express authorization of the city council by vote of that body reflected in the minutes. *City of Bonham v. Sw. Sanitation, Inc.*, 871 S.W.2d 765, 767 (Tex. App.—Texarkana 1994, writ denied); *S. Disposal, Inc. v. City of Blossom*, 165 S.W.3d 887, 893 (Tex. App.—Texarkana 2005, no pet.). Statements or acts of city officers or employees are ineffectual. *City of Bonham*, 871 S.W.2d at 767. Persons or entities contracting with the government are charged by law with notice of this authority. *City of Bonham*, 871 S.W.2d at 767; *City of Blossom*, 165 S.W.3d at 893. Proof of the governing body's acts may only be supplied by the authenticated minutes of the meeting at which the action occurred, unless the minutes have been lost or destroyed. *City of Bonham*, 871 S.W.2d at 767; *City of Blossom*, 165 S.W.3d at 893.  Here, the Marfa City Council never considered the purported

contract, and there are no minutes of a Council meeting considering the purported contract. A plaintiff suing to establish a contract with a city has the burden to both plead and prove that the minutes show the city council's act in authorizing a written contract. *City of Bonham*, 871 S.W.2d at 767; *City of Blossom*, 165 S.W.3d at 893.

As you know, a political subdivision of the State, such as the City of Marfa, possesses immunity from suit. *Tooke v. City of Mexia*, 197 S.W.3d 325, 332 (Tex. 2006). This immunity from suit has not been waived regarding Mr. Romeu's purported contract with Marfa. The circumstances surrounding Mr. Romeu's placing of a deposit for use of the MAC do not constitute the creation of a contract which would be subject to the limited waiver of immunity contained in Chapter 271, Subchapter I of the Local Government Code which deals with city contracts. In this regard, a contract subject to the waiver of immunity in Tex. Local Gov't Code § 271.152 is "a *written contract* stating the essential terms of the agreement for *providing goods or services to the local governmental entity* that is *properly executed on behalf of the local governmental entity*." Tex. Loc. Gov't Code Ann. § 271.151(2)(A) (emphasis added). The purported contract here fails to satisfy these statutory requirements. It is therefore not binding or enforceable with the City. Allow me to briefly explain.

First, it is uncontested that the City and Mr. Romeu did not enter into a written contract. As a result, a suit on any alleged contract does not fall within the limited waiver of immunity provided by § 271.152. *See City of Denton v. Rushing*, 570 S.W.3d 708, 713 (Tex. 2019) ("For governmental immunity to be waived under section 271.152 of the Local Government Code, there must first be an enforceable, written contract."); *La Joya Indep. Sch. Dist. v. Bio-Tech Sols., Inc.*, 13-07-00484-CV, 2009 WL 1089459, at *4 (Tex. App.—Corpus Christi Apr. 23, 2009, no pet.).

Second, the purported contract fails to provide any goods or services to the City. "Had the legislature intended to waive immunity from liability for every contract participated in by the State, it could have done so." *E. Houston Estate Apartments, L.L.C. v. City of Houston*, 294 S.W.3d 723, 736 (Tex. App.—Houston [1st Dist.] 2009, no pet.). It did not. As a result, it has been held that a contract that provides only an indirect, attenuated benefit to a city is insufficient to constitute a waiver of immunity under § 271.152. *Berkman v. City of Keene*, 311 S.W.3d 523, 527 (Tex. App.—Waco 2009, pet. denied) ("[T]he statute does not apply to contracts in which the benefit that the local governmental entity would receive is an indirect, attenuated one.") (quotations omitted). Because the purported contract did not provide a good or service to the City, it would not fall within the limited waiver of immunity provided by § 271.152.

Third, for a contract to waive immunity from suit it must be "properly executed on behalf of the local governmental entity." Tex. Local Gov't Code § 271.151(2). This is a statutory requirement made by the Texas Legislature. Just this past week, the Texas Supreme Court addressed the issue. In *The El Paso Education Initiative, Inc. d/b/a Burnham Wood Charter School v. Amex Properties, LLC*, No. 18-1167 (Tex. May 22, 2020) the Supreme Court held that the use of the phrase "properly executed" in the statute led to the conclusion that "not *all*

executed contracts qualify for Chapter 271's waiver." *Id.* at slip p. 13 (emphasis in opinion). "[A] contract is *properly* executed when it is executed in accord with the statutes and regulations prescribing that authority." *Id.* at slip p. 13 (emphasis in opinion). The Supreme Court in *Amex Properties* dealt with an open-enrollment charter school and looked to law governing those entities to determine whether the contract at issue had been properly executed on behalf of the school, ultimately deciding that because the contract had not been reviewed and adopted by the school board, it was not properly executed. *Id.* at slip p. 14-16. Similarly, a court would look to established law about how cities enter into contracts which, as noted, provides that a city may contract only upon express authorization of the city council by vote of that body reflected in the minutes. *City of Bonham*, 871 S.W.2d at 767; *see also W. Oilfields Supply Co. v. City of Anahuac*, 01-14-00468-CV, 2015 WL 1061130, at *4 (Tex. App.—Houston [1st Dist.] Mar. 10, 2015, no pet.) (Noting that "[i]n the absence of a vote on the essential pricing terms of the proposed contract, the city administrator lacked the authority to sign it on behalf of the City" and finding that contract had not been properly executed on behalf of the city where the city council did not approve the terms of the contract). In this instance, even if there was an executed written contact, which there is not, the contract was not reviewed by, acted upon, or approved by the Marfa City Council. Because no contract was "properly executed on behalf of" the City, as required by statute, there is no contract and the City is immune from suit.

Finally, and significantly, we are in the midst of a pandemic. The Texas Governor's executive orders issued in response to the COVID-19 pandemic have preserved the right of local governmental entities to make determinations regarding whether they should open their own facilities. Executive Order GA-23 provides that a "Covered Service" which is subject to reopening includes museums and libraries at 25% of the total listed occupancy but that "local public museums and local public libraries may so operate only if permitted by the local government[.]" *See* Executive Order GA-23 at p. 4. Executive Order GA-23 provides that "Local government operations" may be opened "as determined by the local government." *See* Executive Order GA-23 at p. 4. Executive Order GA-23 goes on to make the reopening of aquariums, natural caverns, zoos and other facilities owned by local governments dependent upon the local government permitting such operation. *See* Executive Order GA-23 at p. 5 (¶¶ 18(c), 20(a)). The Governor's Office recently confirmed on a conference call with city mayors that the opening of public swimming pools owned by a local government was a decision for the local government to make. Ultimately, the Governor's orders have provided for local governments the right to determine when to open their facilities. The Governor's executive orders issued under Chapter 418 of the Texas Government Code "have the force and effect of law." Tex. Gov't Code § 418.012.

With this authority, the City of Marfa has declared a local state of disaster pursuant to Texas Government Code § 418.108, which state of disaster has been extended by Ordinance through June 11, 2020. *See* Marfa City Ordinance #2020-08, -09. Further, the City has, by ordinance, deemed that its public buildings are to remain in a state of phased reopening through July 11, 2020, and that "[p]ublic events shall not be scheduled during this time at the USO or the MAC Building." As a result of the pandemic, all City facilities including its own City Hall have been closed and will continue in that state due to health concerns.

Exhibit B

It is my understanding that Mr. Romeu was told by the City as early as March that it was unlikely that the gun event would be able to proceed as scheduled, due to the pandemic. The City does not believe that opening its convention center to the public is appropriate given the ongoing pandemic, which has now claimed more than 100,000 lives in the United States and more than 1,560 lives in Texas.

In summary, and respectfully, the City does not believe that a contract was made, nor that its immunity from suit has been waived. Due to the pandemic and based on the Governor's Orders and the Ordinances enacted by the City Council, the City cannot open its facilities at this time. I am asking that the City return the deposit made.

Thank you for your attention to this matter.

Sincerely,

Wm. Andrew Messer

WAM/tad



CASH RECEIPT

Received From Greg Bennett

Date 2/14/20

Devil's Advocate Armory

1169 Fee M4 30-31 Shares

$

Dollars $

Patrick Rive



Exhibit D

## KEN PAXTON
ATTORNEY GENERAL OF TEXAS

March 27, 2020

The Honorable Dustin Burrows
Chair, House Ways and Means Committee
Texas House of Representatives
Post Office Box 2910
Austin, Texas 78768-2910

**Opinion No. KP-0296**

Re:    Whether sections 229.001 and 236.002 of the Local Government Code prohibit municipal or county officials from restricting the sale of firearms through an emergency declaration (RQ-0341-KP)

Dear Representative Burrows:

You ask whether city or county officials may prohibit the sale of firearms through an emergency declaration that excludes firearms retailers as essential businesses.[1]

Multiple provisions within the Government Code recognize governmental entities in Texas may require additional authority during times of disaster to address emergency situations. *See* TEX. GOV'T CODE §§ 418.001–.261. Relevant here, the Legislature authorized the presiding officer of a governing body of a municipality or county to declare a local state of disaster. *Id.* § 418.108(a); *see id* § 418.004(6).[2] Once a local state of disaster has been declared, the "county judge or the mayor of a municipality may control ingress to and egress from a disaster area under the jurisdiction and authority of the county judge or mayor and control the movement of persons and the occupancy of premises in that area." *Id.* § 418.108(g). Pursuant to that authority, some counties and municipalities in Texas, in recent days, declared local disasters due to the spread of the disease COVID-19 and issued orders requiring all non-essential businesses to limit or cease operations.[3] You indicate that some of these orders exclude firearms retailers as essential

---

[1] *See* Letter from Honorable Dustin Burrows, Chair, House Comm. on Ways & Means, to Honorable Ken Paxton, Tex. Att'y Gen. at 1 (Mar. 24, 2020), https://www2.texasattorneygeneral.gov/opinion/requests-for-opinion-rqs ("Request Letter").

[2] Your question is limited to municipal or county authority to restrict the sale of firearms. Request Letter at 1. You do not ask about, and we do not address, any emergency authority the Governor has to limit or suspend the sale of firearms during a disaster declaration. *See* TEX. GOV'T CODE § 418.019 ("The governor may suspend or limit the sale, dispensing, or transportation of alcoholic beverages, firearms, explosives, and combustibles.").

[3] *See, e.g.,* Order of the Mayor of the City of Austin Steve Adler (Mar. 24, 2020), *available at* http://www.mayoradler.com/wp-content/uploads/2020/03/Order-20200324-007-Stay-Home-Work-Safe.pdf.

Exhibit D

businesses, thereby prohibiting or restricting those retailers from operating their businesses. *See* Request Letter at 1.

While the Legislature granted local officials certain emergency powers to address disaster situations, that local authority is not without limitation.  Relevant to your question, provisions in the Local Government Code prohibit municipalities and counties from regulating, among other things, the transfer, possession, ownership, or sale of firearms, "notwithstanding any other law." *See* TEX. LOC. GOV'T CODE §§ 229.001(a), 236.002(a).  Section 229.001 of the Local Government Code prohibits certain municipal regulation:

> *Notwithstanding any other law*, . . . a municipality may not adopt regulations relating to:
>
> (1) the transfer, possession, wearing, carrying, ownership, storage, transportation, licensing, or registration of firearms, air guns, knives, ammunition, or firearm or air gun supplies or accessories;
>
> (2) commerce in firearms, air guns, knives, ammunition, or firearm or air gun supplies or accessories; or
>
> (3) the discharge of a firearm or air gun at a sport shooting range.

TEX. LOC. GOV'T CODE § 229.001(a) (emphasis added).  Using almost identical language, section 236.002 of the Local Government Code prohibits counties from adopting regulations related to the same matters.  *Id.* § 236.002(a).  Texas courts recognize that the phrase "relating to" is a "very broad term." *RSR Corp. v. Siegmund*, 309 S.W.3d 686, 701 (Tex. App.—Dallas 2010, no pet.); *see also Kirby Highland Lakes Surgery Ctr., L.L.P. v. Kirby*, 183 S.W.3d 891, 898 (Tex. App. —Austin 2006, no pet.) (explaining that courts have construed the phrase "related to" within the arbitration context to be "extremely broad" and "capable of expansive reach" (citations and quotation marks omitted)).  In addition, when the Legislature uses the phrase "notwithstanding any other law," courts construe that language as "an express, unambiguous conflicts-of-law provision." *Molinet v. Kimbrell*, 356 S.W.3d 407, 414 (Tex. 2011).  Thus, although section 418.108 of the Government Code may generally allow municipal and county officials to "control the movement of persons and the occupancy of premises" in a local disaster area, notwithstanding that general authority, emergency orders from local officials may not relate to the transfer, possession, ownership or sale of firearms.[4]

---

[4]Some local disaster declarations and related orders restrict the operation of business to delivery or curbside service for certain retail operations. However, federal regulations governing the purchase of firearms generally require in-person transactions with licensed dealers. *See, e.g.*, 27 C.F.R. § 478.124(a) (requiring a licensed dealer to record all firearms transactions on a firearms transaction record, Form 4473); *see also* Bureau of Alcohol, Tobacco, Firearms & Explosives, Form 4473, *available at* https://www.atf.gov/firearms/docs/4473-part-1-firearms-transaction-record-over-counter-atf-form-53009/download (requiring form preparation "in original only at the licensed premises" of the dealer). Thus, limiting retail sales of firearms to delivery or curbside service will effectively prohibit firearms sales from licensed dealers.

The Honorable Dustin Burrows - Page 3                    Exhibit D

     In addition to prohibiting county or municipal regulation in these areas, the Legislature articulated the effect of a municipal or county regulation related to the transfer, possession, ownership or sale of firearms. Any attempt to adopt or enforce an "ordinance, resolution, rule, or policy . . . , or an official action, including in any legislative, police power, or proprietary capacity" taken in violation of subsection 229.001(a) or 236.002(a) "is void." TEX. LOC. GOV'T CODE §§ 229.001(a-1), 236.002(b).[5] The statutes' unambiguous words disclose the Legislature's intent: if a municipality or county adopts a regulation related to the transfer, possession, ownership or sale of firearms, that regulation will be void to the extent of a conflict with section 229.001(a) or section 236.002(a). *See Tex. Lottery Comm'n v. First State Bank of DeQueen*, 325 S.W.3d 628, 639 (Tex. 2010). Thus, municipal and county officials may not use their emergency powers under section 418.108 of the Government Code to regulate or restrict the sale of firearms.

     Section 229.001 of the Local Government Code recognizes municipal authority under other law to "regulate the *use* of firearms, . . . in the case of an insurrection, riot, or natural disaster if the municipality finds the regulations necessary to protect public health and safety." TEX. LOC. GOV'T CODE § 229.001(b)(4) (emphasis added). Thus, municipal governments possess limited authority to regulate firearms during a disaster. *Id.* § 229.001(a). However, the action of using a firearm is distinct from the transfer, ownership, or sale of the firearm, each of which can be accomplished without actual use. Thus, municipal authority to regulate the use of firearms during a disaster does not grant authority to also regulate the transfer, possession, ownership or sale of firearms.

---

[5]The Legislature authorized the Attorney General to "bring an action in the name of the state to obtain a temporary or permanent injunction" against a municipality or county adopting a regulation in violation of these provisions. TEX. LOC. GOV'T CODE §§ 229.001(f), 236.002(f).

The Honorable Dustin Burrows - Page 4                              Exhibit D

## S U M M A R Y

    Subsections 229.001(a) and 236.002(a) of the Local Government Code prohibit a municipality or county from adopting regulations related to the transfer, possession, or ownership of firearms, or commerce in firearms. These provisions apply to municipal and county regulation "notwithstanding any other law." Thus, while municipal and county officials possess general emergency authority to control the movement of persons and the occupancy of premises in a local disaster area under Government Code section 418.108, such orders may not regulate or restrict the sale of firearms.

                              Very truly yours,

                              K E N   P A X T O N
                              Attorney General of Texas

JEFFREY C. MATEER
First Assistant Attorney General

RYAN L. BANGERT
Deputy Attorney General for Legal Counsel

VIRGINIA K. HOELSCHER
Chair, Opinion Committee

Exhibit E

Cause No. _____

| Gregory Romeu, | § | IN THE DISTRICT COURT |
| d.b.a., Devil's Advocate Armory, | § | |
| *Plaintiff* | § | |
| | § | |
| v. | § | 394th JUDICIAL DISTRICT |
| | § | |
| City of Marfa, | § | |
| *Defendant.* | § | PRESIDIO COUNTY, TEXAS |

## SWORN DECLARATION

My name is ___PHILIP CHU___, my date of birth is _10 / 21 / 63_,

and I own a business known as: _PHILIP CHU MODEL EXPO_,

located at _1804 N. DECATUR BLVD #201  LAS VEGAS, NV 89108_.

I had planned on participating with the above-named business as a vendor for a gun show scheduled at the Marfa Activities Center ("Gun Show"), in Marfa, Texas for May 30-31, 2020. I have been involved in such gun shows for _6_ years, and expected to earn $ _1000·00_ in profits (and not just income) after all costs, including but not limited to transportation, inventory, advertising, and labor, and my estimate of profits is reasonable because _COST OF RENTING 3_

_TABLES, HOTEL COST FOR 3 DAYS, MEALS FOOD BREAKFAST, LUNCH, DINNER_

_MILEAGE FOR SUV COMING FROM LAS VEGAS, WEAR AND TEAR ON SUV REPAIR_

_COST, AND PURCHASE OF INVENTORY GUN BOOKS 5K FOR GUN SHOW_

_____. (Insert experience.)

## ASSIGNMENT OF CLAIM FOR DAMAGES

Both for me and my business named above ("Assignor"), I irrevocably assign to Gregory Romeu ("Assignee"), and his successors and assigns, all and interest in all claims of Assignor against the City of Marfa regarding all rights of the Assignor relating to the Gun Show ("Claim").

Assignee is hereby authorized to pursue damages for the Claim in law, settlement, or other resolution, based on his discretion. The consideration provided from Romeu to Assignor for this assignment is a portion of the funds collected after attorney fees and all costs are paid, per capita.

**I declare under penalty of perjury that the proceeding statements are true and correct, and based on my personal knowledge:**

| | |
| --- | --- |
| _Philip Ch_ | _SEPTEMBER 4, 2020_ |
| Assignor, individually and for the above-named business | Date |
| | |
| Gregory Romeu | Date |

Exhibit E

Cause No. _____

| | | |
|---|---|---|
| Gregory Romeu, | § | IN THE DISTRICT COURT |
| d.b.a., Devil's Advocate Armory, | § | |
| *Plaintiff* | § | |
| v. | § | 394th JUDICIAL DISTRICT |
| | § | |
| City of Marfa, | § | |
| *Defendant.* | § | PRESIDIO COUNTY, TEXAS |

## SWORN DECLARATION

My name is Linda Farmer _____, my date of birth is 08 / 16 / 1963,

and I own a business known as: L & G Collectibles _____,

located at 1967 NE. 55th Street Blanchard, Oklahoma 73010 .

I had planned on participating with the above-named business as a vendor for a gun show scheduled at the Marfa Activities Center ("Gun Show"), in Marfa, Texas for May 30-31, 2020. I have been involved in such gun shows for 1 1/2 years, and expected to earn $2,400.00 in profits (and not just income) after all costs, including but not limited to transportation, inventory, advertising, and labor, and my estimate of profits is reasonable because I sell not only

highly sought for pocket knives and dersirable work knives, but also a wide variety of

antique military bayonets, caps, pins and uniforms some dated as far back as the Civil

War.

_____. (Insert experience.)

## ASSIGNMENT OF CLAIM FOR DAMAGES

Both for me and my business named above ("Assignor"), I irrevocably assign to Gregory Romeu ("Assignee"), and his successors and assigns, all and interest in all claims of Assignor against the City of Marfa regarding all rights of the Assignor relating to the Gun Show ("Claim").

Assignee is hereby authorized to pursue damages for the Claim in law, settlement, or other resolution, based on his discretion. The consideration provided from Romeu to Assignor for this assignment is a portion of the funds collected after attorney fees and all costs are paid, per capita.

**I declare under penalty of perjury that the proceeding statements are true and correct, and based on my personal knowledge:**

| | |
|---|---|
| Linda Farmer | 08/05/20 |
| Assignor, individually and for the above-named business | Date |
| | |
| Gregory Romeu | Date |

*Gregory Romeu v. City of Marfa, et al.,* Assignment · Page 1 of 1

Exhibit E

Cause No. _____

| | | |
|---|---|---|
| Gregory Romeu, | § | IN THE DISTRICT COURT |
| d.b.a., Devil's Advocate Armory, | § | |
| *Plaintiff* | § | |
| v. | § | 394th JUDICIAL DISTRICT |
| | § | |
| City of Marfa, | § | |
| *Defendant.* | § | PRESIDIO COUNTY, TEXAS |

### SWORN DECLARATION

My name is __Stanley Golob__, my date of birth is 11/23/1959 and I own a business known as: __Freedom Protective Gear__, located at __10835 Hillpoint Dr. San Antonio TX 78217__ I had planned on participating with the above-named business as a vendor for a gun show scheduled at the Marfa Activities Center ("Gun Show"), in Marfa, Texas for May 30-31, 2020. I have been involved in such gun shows for __8__ years, and expected to earn $__5920.00__ in profits (and not just income) after all costs, including but not limited to transportation, inventory, advertising, and labor, and my estimate of profits is reasonable because __it is based on prior sales in past.__ _____
_____

_____

_____. (Insert experience.)

### ASSIGNMENT OF CLAIM FOR DAMAGES

Both for me and my business named above ("Assignor"), I irrevocably assign to Gregory Romeu ("Assignee"), and his successors and assigns, all and interest in all claims of Assignor against the City of Marfa regarding all rights of the Assignor relating to the Gun Show ("Claim").

Assignee is hereby authorized to pursue damages for the Claim in law, settlement, or other resolution, based on his discretion. The consideration provided from Romeu to Assignor for this assignment is a portion of the funds collected after attorney fees and all costs are paid, per capita.

**I declare under penalty of perjury that the proceeding statements are true and correct, and based on my personal knowledge:**

_____     __8-24-20__
Assignor, individually and for the above-named business          Date

_____     _____
Gregory Romeu          Date

# Marfa Show Brakedown

| | | |
|---|---|---|
| Tables | $55 Each | $440.00 |
| Travel | .41 per mile | $780.00 |
| Motel | | $225.00 |
| Meals | | $125.00 |
| Misc   Expenses | | $50.00 |
| Loss of Sales | | $4306.00 |
| | **Total Losses** | **$5926.00** |

Exhibit E

|  | Cause No. |  |
|---|---|---|
| Gregory Romeu,<br>d.b.a., Devil's Advocate Armory,<br>   *Plaintiff*,<br><br>v.<br><br>City of Marfa,<br>   *Defendant*. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | IN THE DISTRICT COURT<br><br><br>394th JUDICIAL DISTRICT<br><br><br>PRESIDIO COUNTY, TEXAS |

## SWORN DECLARATION

My name is <u>Russell Murray</u>, my date of birth is <u>04/09/69</u>, and I own a business known as: <u>Kagans The Big Dog</u>, located at <u>2200 W. Mosley Loop, Alpine Tx. 79830</u>. I had planned on participating with the above-named business as a vendor for a gun show scheduled at the Marfa Activities Center ("Gun Show"), in Marfa, Texas for May 30-31, 2020. I have been involved in such gun shows for <u>5</u> years, and expected to earn $ <u>6000.00</u> in profits (and not just income) after all costs, including but not limited to transportation, inventory, advertising, and labor, and my estimate of profits is reasonable because <u>Gun Shows</u> <u>always do very well in marfa Tx. one Hundred plates were Pre-sold. I Have made right at $10,000.00 Before. $20 per plate</u>
_____
_____
(Insert experience.)

## ASSIGNMENT OF CLAIM FOR DAMAGES

Both for me and my business named above ("Assignor"), I irrevocably assign to Gregory Romeu ("Assignee"), and his successors and assigns, all and interest in all claims of Assignor against the City of Marfa regarding all rights of the Assignor relating to the Gun Show ("Claim").

Assignee is hereby authorized to pursue damages for the Claim in law, settlement, or other resolution, based on his discretion. The consideration provided from Romeu to Assignor for this assignment is a portion of the funds collected after attorney fees and all costs are paid, per capita.

I declare under penalty of perjury that the proceeding statements are true and correct, and based on my personal knowledge:

_____        8/28/22
Assignor, individually and for the above-named business        Date


_____        _____
Gregory Romeu        Date

*Gregory Romeu v. City of Marfa, et al., Assignment*        Page 1 of 1